UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | )<br>)<br>) | |
| v. | )<br>) | No. S1-4:19-CR-00155-RWS |
| KEVIN W. WIEGAND, | )<br>)<br>) | |
| Defendant. | ) | |

**GUILTY PLEA AGREEMENT**

Come now the parties and hereby agree, as follows:

**1. PARTIES:**

The parties are the Defendant Kevin W. Wiegand, represented by Assistant Federal Public Defender Michelle Monahan, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

**2. GUILTY PLEA:**

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the Defendant's voluntary plea of guilty to Count One of the Superseding Information, the government agrees to move for the dismissal as to the Defendant of the original Indictment dated

<u>DATE</u> at the time of sentencing. Moreover, the United States agrees that no further federal prosecution will be brought in this District relative to the Defendant's activity and conduct reflected in both the original Indictment and Superseding Information, of which the Government is aware at this time.

In addition, the government agrees to not seek statutory enhancement of Defendant's sentence pursuant to Title 21, United States Code, Section 851(a).

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request.

The defendant also agrees, pursuant to the guilty plea to Count One of the Superseding Information, to forfeit to the United States all property subject to forfeiture under the applicable statute(s), including but not limited to any and all U.S. Currency confiscated on October 19, 2017.

**3. ELEMENTS:**

As to Count One, the Defendant admits to knowingly violating Title 18, United States Code, Section 1952, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

> *One*, between on or about the dates of September 1, 2017 and on or about October

19, 2017, the defendant did travel in interstate commerce;

*Two*, defendant did travel with the intent to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of an unlawful activity, to wit: drug trafficking in violation of Title 21, United States Code, Section 841(a)(1); and

*Three*, thereafter knowingly performed and attempted to perform an act to promote, manage, establish, carry on, and facilitate the promotion, management, establishment and carrying on of such unlawful activity.

**4. FACTS:**

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

On October 19, 2017, Officers with the St. Charles Police Department were dispatched to an address in Weldon Spring, MO, located within the Eastern District of Missouri. A residence had burned down the previous evening, and the following day a neighbor identified two white males (later identified as the Defendant, Kevin Wiegand, and the co-defendant, Adam Wiegand) who appeared to be rummaging through the remains of the house, attempting to break into a safe. The neighbor observed the Defendant and A. Wiegand carrying large amounts of U.S. Currency to their truck.

Officers responded to the address, located the truck occupied by the Defendant and co-defendant, and conducted an investigatory stop.  The Defendant and A. Wiegand explained that they were brothers, that they had lived at burned down house with their parents, and were getting "some stuff." Officers asked the Defendant and A. Wiegand to exit the vehicle. Upon exiting,

Officers observed what appeared to be THC wax lying in plain view on the floorboard, and sheets of what appeared to be LSD tabs on the dashboard.

The Defendant and A. Wiegand were placed under arrest, at which point Officers conducted a lawful search of the vehicle. Officers discovered multiple packages of sealed U.S. Currency (approximately $37,220), labeled by amount; a glass smoking pipe in the center console; several suspected LSD tabs; 10 vacuum sealed vials of an amber liquid suspected to contain LSD; and a fireproof safe/briefcase that appeared to be partially burned.

The Defendant and A. Wiegand were taken to the St. Charles Police Department where they were booked and separately read their *Miranda* rights outside of each other's presence. After waiving his rights, the Defendant agreed to speak to law enforcement in a recorded interview.

The Defendant denied owning the drugs or U.S. Currency, and denied selling drugs as well. The Defendant claimed that A. Wiegand, did his own thing, including selling LSD. The Defendant stated that A. Wiegand would travel to Arkansas near Springfield, MO in order to purchase quantities of LSD for redistribution, and that the Defendant had in the past driven A. Wiegand to Arkansas for this purpose. The Defendant admitted knowing the purpose of the trips at the time he agreed to drive A. Wiegand to Arkansas.

The seized narcotics were sent to the St. Charles County Criminalistics Laboratory, where the amber liquid tested positive for approximately 14.7 grams of LSD, a Schedule I controlled substance. Testimony at trial would have revealed that this quantity is consistent with distribution as opposed to personal use.  The parties further agree that some or all of the seized U.S. Currency constituted proceeds of co-defendant A. Wiegand's drug trafficking activity.

The parties agree that the quantity of LSD that the Defendant is accountable for as a

result of his travel to Arkansas is not subject to precise calculation. In light of the Defendant's statements, witness statements, evidentiary seizures, and the totality of the investigation, the parties agree to hold the Defendant accountable for an aggregate amount of LSD that amounts to at least 10 grams but less than 30 grams. The Defendant admits that the most recent occasion where he drove A. Wiegand to Arkansas for the purpose of acquiring LSD for redistribution in the Eastern District of Missouri was between the dates of September 1, 2017 and September 14, 2017.

**5. STATUTORY PENALTIES:**

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not more than 5 years, a fine of not more than $250,000, or both such imprisonment and fine. The Court shall also impose a period of supervised release of not more than 3 years.

**6. U.S. SENTENCING GUIDELINES: 2018 MANUAL:**

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply.

    **a. Chapter 2 Offense Conduct:**

        (1) **Base Offense Level:** The parties agree that the Base Offense Level is 30, as found in Section 2E1.2(a)(2). The parties utilizing subparagraph (2) of Section 2E1.2(a) are referred to Section 2D1.1 (drug trafficking) as an offense applicable to the specified unlawful activity for which the interstate travel was undertaken. The parties agree that the Base Offense

Level under 2D1.1(c)(5) would be 30, as the quantity of mixture or substance containing LSD for which the defendant is accountable, including relevant conduct, is more than 10 grams and less than 30 grams, resulting in the agreed upon Base Offense Level.

(2) **Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply:

**b. Chapter 3 Adjustments:** The parties agree that the following Adjustments are applicable:

(1) **Role in the Offense:** The parties agree that the Defendant was a minor participant as, based upon the known evidence, his participation was limited to driving a co-defendant interstate in furtherance of drug trafficking, and thus a two level reduction pursuant to Section 3B1.2(b) is applicable.

(2) **Acceptance of Responsibility:** The parties agree that three levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the government of the defendant's intention to plead guilty. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

   (3) **Other Adjustments:** The parties agree that the following additional adjustments apply:    None.

 **c. Other Adjustment(s) and Disputed Adjustments:**    None.

 **d. Estimated Total Offense Level:** The parties estimate that the Total Offense Level is 25, unless defendant is a Career Offender. Depending on the underlying offense and defendant's criminal history, defendant could be a Career Offender pursuant to Section 4B1.1. If the Court finds defendant is a Career Offender, the Total Offense Level may be higher and the Criminal History Category may be as high as Category VI. Defendant has discussed these possibilities with defense counsel. Both parties reserve the right to argue that the defendant is or is not a Career Offender or an Armed Career Criminal.

 **e. Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

 **f. Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

**7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

    **a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

        (1) **Non-Sentencing Issues:** The parties waive all rights to appeal all non jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

        (2) **Sentencing Issues:** In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining a Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, the agreed Total Offense Level and sentences the defendant within or above that range.

    **b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

    **c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records

pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

 **a. Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

 **b. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:**

Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

 **c. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished.

 **d. Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a

total of $100, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**e. Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f. Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, costs of incarceration and costs of supervision. The defendant agrees that any fine imposed by the Court will be due and payable immediately.

**g. Forfeiture:** The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. Defendant specifically agrees to the forfeiture of the following: Approximately $37, 220 U.S. Currency. The defendant agrees the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence. The defendant agrees not to object to any administrative, civil or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the government and/or to rebut the claims of nominees and/or alleged third party owners. The defendant knowingly and intelligently waives all constitutional and statutory challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument. The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to

forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees that said items may be disposed of by law enforcement officials in any manner.

## 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses charged against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses.  The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has

Page **11** of **14**

completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

**10.  VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:**

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

**11.  CONSEQUENCES OF POST-PLEA MISCONDUCT:**

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful

information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

September 3, 2020
Date

/s/ Geoffrey S. Ogden
GEOFFREY S. OGDEN #66930 MO
Special Assistant United States Attorney
111 South 10th Street, Room 20.333
St. Louis, Missouri 63102
314-539-2200
Geoffrey.Ogden@usdoj.gov

September 7, 2020
Date

KEVIN W. WIEGAND
Defendant

September 3, 2020
Date

/s/Michelle L. Monahan
MICHELLE L. MONAHAN #42736MO
Attorney for Mr. Wiegand
Assistant Federal Public Defender
1010 Market Street, Suite 200
St. Louis, Missouri 63102
314-241-1255
Michelle_Monahan@fd.org